UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HILLCREST BAPTIST CHURCH, EDWARD WILLIAM LEHMAN; ALANA LOUISE LEHMAN, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and GREGORY W. CHRISTIAN, Acting Director, U.S. CIS Nebraska Service Center, <br><br> Defendants. | No. C06-1042Z <br><br> ORDER |

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment, docket no. 8, and Defendants' Cross-Motion to Dismiss, or in the Alternative, to Stay District Court Proceedings, docket no. 11. Having considered the briefs and evidence in support of and in opposition to the motions, the Court enters the following Order.

///

///

///

///

ORDER - 1

# I. BACKGROUND

## A. Parties and Present Action

Edward Lehman, and his wife, Alana Lehman, are Canadian citizens, with three U.S. citizen children. Ex. U[1] at 67 (E. Lehman Decl.) ¶ 4; Ex. U at 72 (A. Lehman Decl.) ¶ 5. Mr. and Mrs. Lehman, and Hillcrest Baptist Church, a church in Sultan, Washington where Mr. Lehman is a pastor (collectively "Plaintiffs"), bring this action against the United States of America, the United States Citizenship and Immigration Services ("CIS"), and Gregory W. Christian, Acting Director of the CIS Nebraska Service Center (collectively the "Government" or "Defendants"), seeking to reverse CIS's decision to deny the Lehmans' applications for permanent resident and adjustment of status, to order that the applications be approved, and to order that Mr. Lehman's employment authorization be approved retroactive to May 14, 2003.

## B. The Lehmans' Immigration History

In June 1998, Mr. Lehman received an R-1 religious worker visa, and Mrs. Lehman received an R-2 visa, as a derivative beneficiary. These religious worker visas ("R-visas") were valid for three years, through June 3, 2001.[2] The Lehmans' then-attorney, Desmond Kolke, filed applications for visa extensions, which were approved and, as a result, the R-visas were valid through June 3, 2003.[3] Ex. A at 2; Ex. B at 3. In June 2002, approximately one year before the expiration of the R-visas, Attorney Kolke filed paperwork on behalf of the Lehmans to apply to adjust their status to that of permanent residents of the United States. Ex. U at 68 (E. Lehman Decl.) ¶ 13; Ex. U at 72 (A. Lehman Decl.) ¶ 9; Ex. U at 75

---

[1] Unless otherwise noted, the Exhibits referred to in this Order are Plaintiffs' Exhibits, docket no. 8.

[2] Under United States immigration law, individuals with R-visas have permission to remain in the United States temporarily. The law distinguishes these "nonimmigrants" from "immigrants," who have permission to reside in the United States permanently.

[3] Individuals who qualify for an R-visa are allowed to remain in the United States to perform religious work for a maximum of five years. 8 U.S.C. § 1101(a)(15)(R)(ii).

ORDER - 2

(Kolke Decl.) ¶¶ 6-7.  In February 2003, the Lehmans learned that CIS had misplaced the Lehmans' file, and CIS asked them to re-submit the paperwork.  Ex. U at 68 (E. Lehman Decl.) ¶ 15; Ex. U at 72 (A. Lehman Decl.) ¶ 10; Ex. U at 75 (Kolke Decl.) ¶ 8.

On May 14, 2003, several weeks before the expiration of the Lehmans' R-visas, Attorney Kolke re-filed the paperwork to adjust status.  Specifically, he filed the following forms with the CIS Nebraska Service Center: a "Petition for . . . Special Immigrant" (Form I-360), on behalf of Hillcrest Baptist Church, Ex. E at 10-13; an "Application to Register Permanent Resident or Adjust Status" (Form I-485) on behalf of Mr. Lehman, Ex. E at 14-17; and another Form I-485, on behalf of Mrs. Lehman, Ex. F at 19-22.  On May 20, 2003, CIS returned the two I-485 applications and fees, stating, in a letter to Mr. Lehman, in pertinent part:

> At this moment, the service does not accept concurrently filed I-360s and I-485s.  Only concurrently filed I-140s and I-485s are accepted at the present time.  The I-360 petition you filed has been accepted. . . . If your I-360 is approved, you may then file the Employment Based I-485 Applications for you and your spouse.

Ex. G.  The "I-140" and "I-360" Forms are filed by employers whereas an "I-485" Form is filed by a person seeking permanent resident status.  An "I-140" Form refers to an Immigrant Petition for Alien Worker that an employer files on behalf of a *non-religious* worker in order to enable that non-citizen to receive an immigrant visa pursuant to the Immigration and Nationality Act ("INA") § 203(b)(1), (2), or (3), 8 U.S.C. § 1153(b)(1), (2), or (3).  An "I-360" Form refers to a Petition for Special Immigrant that an employer files on behalf of a *religious* worker in order to enable that non-citizen to receive an immigrant visa pursuant to INA § 203(b)(4), 8 U.S.C. § 1153(b)(4).  Thus, a non-religious worker needs CIS to approve an I-140 Form and an I-485 Form in order to adjust to permanent resident status, and a religious worker needs CIS to approve an I-360 Form and an I-485 Form in order to adjust to permanent resident status.

ORDER - 3

As of the June 3, 2003 date of the expiration of the Lehmans' R-visas, the I-360 Form was pending with CIS, but CIS had rejected the Lehmans' I-485 applications as prematurely filed. Despite the expiration of the Lehmans' R-visas on June 3, 2003, Attorney Kolke informed Mr. Lehman that he was authorized to stay in the United States and to continue to work based upon the pending I-360 Form. Ex. U at 75 (Kolke Decl.) ¶ 11. On December 2, 2003, 180 days after the R-visas expired, CIS issued a Request for Evidence, stating that "a form I-360 does not grant nonimmigrant employment authorization" and ordering Mr. Lehman to leave the United States. Ex. I at 26. Attorney Kolke again reassured Mr. Lehman that "because the applications were filed before the R-1 visas expired, he could continue to work and stay in the United States." Ex. U at 76 (Kolke Decl.) ¶ 12. In December 2003, Attorney Kolke re-filed the I-485 applications. Id. ¶ 13.

On March 31, 2004, CIS approved the I-360 Petition for Special Immigrant (religious worker). Ex. K. A letter from CIS that was addressed to Hillcrest Baptist Church stated: "Form I-485 applications may not be filed simultaneously with Form I-360 petitions for *religious workers*. . . . Now that you have received an approval for this beneficiary, he may now file his I-485 application and Form I-765 to maintain employment authorization." Ex. L (emphasis in original). On June 4, 2004, Attorney Kolke again re-filed the I-485 applications, which were received by CIS on June 7, 2004. Exs. M and N. On August 30, 2005, CIS denied the I-485 applications because the Lehmans had filed the forms after their R-visas expired and because Mr. Lehman engaged in unauthorized work for more than 180 days. Exs. S and T. CIS's decision to deny the I-485 applications was made pursuant to INA § 245(c)(2), 8 U.S.C. § 1255(c)(2), which provides that INA § 245(a), 8 U.S.C. § 1255(a) (permitting the adjustment of status) does not apply to "an alien . . . who hereafter continues in or accepts unauthorized employment prior to filing an application for adjustment of status or who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (other than through no fault of his own

ORDER - 4

or for technical reasons) to maintain continuously a lawful status since entry into the United States." 8 U.S.C. § 1255(c)(2). In making this decision, CIS concluded that an exception to § 245(c)(2), 8 U.S.C. § 1255(c)(2), in INA § 245(k), 8 U.S.C. § 1255(k), which allows for a 180-day grace period, did not apply because Mr. Lehman worked for an entire year beyond the expiration of his R-1 visa.

The Lehmans hired new counsel, who, on December 22, 2005, filed Motions to Reopen, which CIS subsequently denied on March 8, 2006. Exs. U, X, and Y. At the same time, the Lehmans' new counsel filed an "Application for Employment Authorization" (Form I-765), which CIS subsequently denied on March 15, 2006. Exs. U-W, Z. CIS explained that it denied Mr. Lehman's employment authorization (Form 1-765) because Mr. Lehman's I-485 application for adjustment of status to permanent resident had been denied. Ex. Z. In the decision documenting the denial of employment authorization, CIS explicitly stated that "[t]here is no appeal to this decision." Id. Thereafter, the Lehmans enlisted U.S. Senator Maria Cantwell in an attempt to get CIS to reconsider its denial of the Lehmans' applications to adjust status; however, on June 26, 2006, CIS provided final notice to Senator Cantwell's office that it would not change its decision and it would not reopen the cases. See Ex. AA (Letter dated July 28, 2006, from Senator Cantwell to Mr. Lehman).

On July 24, 2006, Plaintiffs filed the Complaint for Declaratory and Injunctive Relief. Compl., docket no. 1, in this Court.

On August 2, 2006, Mr. and Mrs. Lehman were served with Notices to Appear, which commenced removal proceedings against them. Gov't Ex. AA, docket no. 11. Mr. and Mrs. Lehman's "master calendar" hearing is set for March 1, 2007, at 1 p.m. before U.S. Immigration Judge Edward Kandler.

**C.    Present Motions**

Plaintiffs have filed a Motion for Summary Judgment, docket no. 8. First, Plaintiffs challenge CIS's May 20, 2003 refusal to accept the Lehmans' I-485 applications, which were

ORDER - 5

concurrently filed with Hillcrest Baptist Church's I-360 petition on May 14, 2003. Plaintiffs assert that CIS's decision is a "final agency action" under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701, et seq. Plaintiffs assert that CIS's policy to accept concurrent filings of Form I-140s and Form I-485s, but not to accept concurrent filings of Form I-360s and Form I-485s, see 8 C.F.R. § 235.2(a)(2)(i)(B),[4] is a violation of the Immigration and Naturalization Act ("INA"), and a violation of the Due Process Clause of the Fifth Amendment of the United States Constitution. Second, Plaintiffs challenge CIS's August 30, 2005 denial of Plaintiffs' I-485 applications. They assert that CIS's decision must be reversed in light of CIS's "improper" policy not to accept concurrent filings of Form I-360s and Form I-485s and in light of misleading information provided by CIS that led the Lehmans to believe they could file the I-485 applications after the I-360 petition was approved. Plaintiffs also argue that the period of "unlawful immigration status" under INA § 245(c)(2), 8 U.S.C. § 1255(c)(2), and the period of "unlawful presence" under INA § 212(a)(9)(B), 8 U.S.C. § 1182(a)(9)(B),[5] should be tolled because of ineffective assistance of counsel. Third, Plaintiffs challenge CIS's March 15, 2006 denial of the "Application for Employment Authorization" (Form I-765) and urge its reversal in light of CIS's May 20, 2003 and August 30, 2005 actions, and the ineffective assistance of counsel provided by Attorney Kolke.

---

[4] 8 C.F.R. § 245.2 (a)(2)(i)(B) ("If, at the time of filing, approval of a visa petition filed for classification under . . . section 203(b)(1), (2) or (3) of the Act would make a visa immediately available to the alien beneficiary, the alien beneficiary's adjustment application will be considered properly filed whether submitted concurrently with or subsequent to the visa petition, provided that it meets the filing requirements contained in parts 103 and 245. For any other classification, the alien beneficiary may file the adjustment application only after the Service has approved the visa petition.").

[5] 8 U.S.C. § 1182(a)(9)(B) ("Any alien (other than an alien lawfully admitted for permanent residence) who . . . has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States, is inadmissible.").

ORDER - 6

In response to Plaintiffs' summary judgment motion, the Government filed Defendants' Cross-Motion to Dismiss, or, In the Alternative, to Stay District Court Proceedings, docket no. 11.  The Government moves to dismiss for lack of subject matter jurisdiction, asserting that Plaintiffs have failed to exhaust their administrative remedies because Plaintiffs are able to renew their request for adjustment of status in Immigration Court in connection with the removal proceedings currently pending against them.  Alternatively, the Government moves that the case be stayed until the completion of the Lehmans' pending removal proceedings in U.S. Immigration Court in Seattle, and any appeals therefrom, due to the "real chance" those proceedings will moot all or many of the issues raised in this lawsuit.  Other than the cross-motion to dismiss, the Government has not filed an opposition to Plaintiffs' summary judgment motion.

## II. DISCUSSION

### A. Defendants' Cross-Motion to Dismiss,[6] docket no. 11

#### 1. Motion to Dismiss Standard

On a motion to dismiss under Fed. R. Civ. P. 12(b)(1), even though a defendant moves to dismiss the complaint for lack of subject matter jurisdiction, the plaintiff bears the burden of proving that the Court has jurisdiction to decide the case.  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (citations omitted).

#### 2. Jurisdiction to Review CIS's Denial of I-485 Applications

Plaintiffs assert that the Court has jurisdiction to hear Plaintiffs' claims under the general federal question jurisdiction statute, which states: "The district courts shall have

---

[6] The Court declines to stay the matter pending the outcome of the removal proceedings.  As a result, the Court's analysis focuses on Defendants' motion to dismiss.

ORDER - 7

original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Plaintiffs also assert that the Court has subject matter jurisdiction to review CIS's decisions under the APA. The APA provides the general right to judicial review of an agency action as follows: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA also establishes when such review is available: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. . . ." 5 U.S.C. § 704. "When an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule, the agency action is 'final for the purposes of [5 U.S.C. § 704]' and therefore 'subject to judicial review under [5 U.S.C. § 702].'" Darby v. Cisneros, 509 U.S. 137, 146 (1993) (quoting the APA). In other words, the APA, 5 U.S.C. § 704, "has limited the availability of the doctrine of exhaustion of administrative remedies to that which the statute or rule clearly mandates." Id. Plaintiffs assert that they had exhausted all administrative remedies on the date of filing the lawsuit because the applicable agency rule expressly denied them a right to appeal. See 8 C.F.R. § 245.2(a)(5)(ii) ("*No appeal lies from the denial of an application [for adjustment of status] by the director*, but the applicant, if not an arriving alien, retains the right to renew his or her application in proceedings [before a U.S. Immigration Judge].") (emphasis added); see also Exs. S and T (CIS's denial of the Lehmans' I-485 applications stated: "The regulations do not provide for an appeal to this decision.").

The Government argues that Plaintiffs have several layers of judicial review available to them now that removal proceedings have been initiated against them. The Government asserts that the Lehmans have a right to reassert their applications to adjust status before a U.S. Immigration Judge, then to appeal that decision to the Bureau of Immigration Appeals

ORDER - 8

(the "BIA"), and thereafter, if necessary, to appeal to the Ninth Circuit Court of Appeals. Although Plaintiffs admit that the denial of an application for adjustment of status may be renewed before a U.S. Immigration Judge in removal proceedings, the doctrine of exhaustion of remedies does not apply because there is no statutory or agency rule that requires an appeal before review. See Darby, 509 U.S. at 154 ("an appeal to 'superior agency authority' is a prerequisite to judicial review only when expressly required by statute or when an agency rule requires appeal before review."). At the time Plaintiffs filed this lawsuit,[7] there were no further administrative remedies the Lehmans could pursue; the Lehmans had no ability to commence removal proceedings. See 8 C.F.R. § 1003.14(a).

Courts are split on the question of whether an applicant for adjustment of status can seek judicial review of a denial of the application in district court prior to renewing the request in the context of removal proceedings. The Government relies on numerous cases from out of the Ninth Circuit to argue that there is no judicial review. See Lopez-Flores v. Dep't Homeland Sec., 387 F.3d 773, 776-77 (8th Cir. 2004); Cardoso v. Reno, 216 F.3d 512, 518 (5th Cir. 2000); McBrearty v. Perryman, 212 F.3d 985, 987 (7th Cir. May 11, 2000); Howell v. Immigration and Naturalization Serv., 72 F.3d 288, 293 (2d Cir. 1995); Randall v. Meese, 854 F.2d 472, 474-75 (D.C. Cir. 1988). Lopez-Flores is irrelevant because the Eighth Circuit suspended a reinstatement of a prior deportation order to permit an applicant for adjustment of status to renew his application in the context of a subsequent deportation proceeding; the case did not address the issue of whether a district court has jurisdiction. See Lopez-Flores, 387 F.3d at 776-77. The other cases, however, do hold that the district court lacks jurisdiction to review a denial of adjustment of status because of the availability of review in the context of removal proceedings. See Cardoso, 216 F.3d at 518 (holding that

---

[7] Federal subject matter jurisdiction must exist at the time the action is commenced. Schwarzer, et al., FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 2:90 (Rutter Group 2006). "Subject matter jurisdiction ordinarily depends on the facts as they exist when the complaint is filed," id. at § 2:90.4, and "may not be divested by subsequent events." Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991) (dealing with diversity jurisdiction).

ORDER - 9

applicant did not exhaust administrative remedies because she could renew her request upon the commencement of removal proceedings); McBrearty; 212 F.3d at 987 (holding that "[t]he suit was premature, since . . . plaintiffs . . . could obtain review of the district director's decision by the Board of Immigration Appeals if and when the immigration service institutes removal (i.e., deportation) proceedings against them"); Howell, 72 F.3d at 293 (holding that "the district court lacked jurisdiction to review the district director's denial of Howell's application for adjustment of status once deportation proceedings commenced,[8] because she failed to exhaust her administrative remedies"); Randall, 854 F.2d at 482 (holding that action to review director's denial of adjustment of status was premature, under circumstances where deportation proceedings had commenced and appeal was pending before Board of Immigration Appeals).

Plaintiffs rely on Ninth Circuit and United States Supreme Court cases to support their argument that there is district court jurisdiction to review a district director's denial of adjustment of status. In holding that a district court "has jurisdiction to review a denial of status adjustment," the Ninth Circuit in 1986 reasoned that although "[d]eterminations made during a deportation hearing, including final deportation orders, are reviewable exclusively by the Court of Appeals . . . [o]ther determinations, ancillary to an application for permanent residency, must be challenged first in district court." Jaa v. United States Immigration and Naturalization Serv., 779 F.2d 569, 571 (9th Cir. 1986). In Jaa, the Ninth Circuit rejected the Government's assertion that the applicant had failed to exhaust her administrative remedies. Id. The Ninth Circuit in Jaa relied on the United States Supreme Court's decision in Cheng Fan Kwok v. Immigration and Naturalization Service, which held that the judicial

---

[8] The Second Circuit in Howell expressly did not reach the question of whether a district court possesses subject matter jurisdiction when removal proceedings have not commenced. 72 F.3d at 293 n.5. Subsequently, the district court in Chen v. Reno, 1997 WL 316482 at * 2 (S.D.N.Y. June 11, 1997), held that the district court has jurisdiction if deportation proceedings have not been commenced because the "litigant has a right to a prompt resolution of decisions concerning his status affording him the opportunity to make personal, educational, or career plans."

ORDER - 10

review provisions of § 106(a) of the INA, codified at 8 U.S.C. § 1105a, "embrace only those determinations made during a [deportation] proceeding" and that "[i]n situations to which the provisions of § 106(a) are inapplicable, the alien's remedies would, of course, ordinarily lie first in an action brought in an appropriate district court."  392 U.S. 206, 210, 216 (1968).  In support of its ruling in favor of the district court's exercise of jurisdiction, the Ninth Circuit in Jaa also cited to Galvez v. Howerton, 503 F. Supp. 35, 38 (C.D. Cal. 1980), a district court case in which the Court held that it had jurisdiction under 8 U.S.C. § 1329[9] and 8 U.S.C. § 1331 to review a denial of an adjustment of status.  Ten years after Jaa, and despite intervening development of out-of-circuit authority to the contrary, such as in Howell (2d. Cir. 1995) and Randall (D.C. Cir. 1988), the Ninth Circuit has twice again held that a district court has jurisdiction to review a denial of an application for adjustment of status.  See Chan v. Reno, 113 F.3d 1068, 1071 (9th Cir. 1997) (citing Jaa and Tang); Tang v. Reno, 77 F.3d 1194, 1196 (9th Cir. 1996) (citing 28 U.S.C. § 1331).

The Court concludes that Jaa, Tang, and Chan are directly on point[10] and are controlling.[11]  Accordingly, this Court has jurisdiction to review CIS's denial of the Lehmans' applications for adjustment of status pursuant to 28 U.S.C. § 1331 and the APA, 5 U.S.C. § 702.

---

[9] This statutory section was amended in 1996 to clarify that it only regards jurisdiction for cases *brought by the United States*.

[10] Two other Ninth Circuit cases relied upon by Plaintiffs do not involve applications for an adjustment of status, but they support Plaintiffs' argument that the district director's discretionary decisions do not constitute final orders of deportation.  See Toolee v. Immigration and Naturalization Serv., 722 F.2d 1434, 1437 (9th Cir. 1983) (district court, not court of appeals, has jurisdiction to review district director's denial of a request for an extension of status); Ghorbani v. Immigration and Naturalization Serv., 686 F.2d 784, 791 (9th Cir. 1982) (district court, not court of appeals, has jurisdiction to review district director's denial of a request for reinstatement of student status).

[11] Plaintiffs also heavily rely on a favorable recent Third Circuit case that holds that when no deportation proceedings are pending, a denial of adjustment of status is a final agency action subject to judicial review by the district court pursuant to 28 U.S.C. § 1331 and the APA.  See Pinho v. Gonzales, 432 F.3d 193, 200-204 (3d. Cir. 2005).

ORDER - 11

### 3.     **Jurisdiction Over Plaintiffs' Other Claims**

Plaintiffs' arguments that the Court has jurisdiction over Plaintiffs' other claims (in addition to the claim for adjustment of status) are unopposed by the Government. Plaintiffs first argue that this Court has jurisdiction over Plaintiffs' claim that CIS's policy of refusing to accept concurrently filed applications for adjustment of status, see 8 C.F.R. § 245.2(a)(2)(i)(B), is unlawful. Plaintiffs rely on Espinoza-Gutierrez v. Smith, 94 F.3d 1270, 1273 (9th Cir. 1996), which concluded that the BIA has no jurisdiction to review questions involving the constitutionality of INA statutes and regulations. The Government does not discuss this argument, regulation or case in its Reply, docket no. 13. Plaintiffs also point out that their claim is ripe because the regulation was applied to the Lehmans when CIS rejected their I-485 applications on May 20, 2003. Cf. Reno v. Catholic Social Servs., 509 U.S. 43, 57-58 (1993) (ripeness requires that the parties are affected in a concrete way). CIS's rejection of the concurrently filed applications subsequently led to the denial of the Lehmans' applications for adjustment of status and Mr. Lehman's application for employment authorization. The Court has jurisdiction over Plaintiffs' claim regarding the constitutionality of CIS's policy not to accept the concurrently filed I-360 and I-485 applications.

Plaintiffs next argue that this Court has jurisdiction over Plaintiffs' claim that the period of "unlawful presence" under INA § 212(a)(9)(B), 8 U.S.C. § 1182(a)(9)(B) must be tolled. Plaintiffs seek a declaratory judgment that the Lehmans have not to date accrued any "unlawful presence." This statutory section would prevent the Lehmans from returning to the United States for ten years if they are forced to leave the United States. Again, this argument is unaddressed by Defendants in their Reply, docket no. 13. The Court has jurisdiction over Plaintiffs' claim that the period of "unlawful presence" must be tolled.

Lastly, Plaintiffs argue that this Court has jurisdiction over Plaintiffs' claim for review of CIS's denial of Mr. Lehman's request for employment authorization. Plaintiffs rely on

two district court cases that held that a district court has jurisdiction to review the denial of a request for employment authorization. See Grijalva v. Ilchert, 815 F. Supp. 328 (N.D. Cal. 1993); Gomez-Arauz v. McNary, 762 F. Supp. 310 (W.D. Okla. 1991). In Grijalva, District Court Judge Weigel exercised jurisdiction to consider plaintiff's motion for a preliminary injunction to enjoin INS from withholding employment authorization documents. 815 F. Supp. at 329-32 (noting that "[b]ecause there is no administrative appeal from an INS decision denying employment authorization, Plaintiff filed a complaint in federal district court."). In Gomez-Arauz, District Court Judge Russel exercised jurisdiction to review INS's denial of the plaintiff's application for employment authorization. 762 F. Supp. at 312. The Court concluded that INS unlawfully denied the application for employment authorization and ordered the government to grant the plaintiff's employment authorization until such time as final orders are entered on the plaintiff's application for permanent residence. Id. at 315. Again, this argument is unaddressed by Defendants in their Reply, docket no. 13. The Court has jurisdiction over Plaintiffs' claim for review of CIS's denial of Mr. Lehman's request for employment authorization.

### 4. REAL ID Act of 2005

The Government asserts that the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B., 119 Stat. 231 (May 11, 2005) presents an additional barrier to this Court's assuming jurisdiction because the REAL ID Act eliminates district court jurisdiction over orders of removal. The Government relies on two Ninth Circuit cases in support of its argument. See Martinez-Rosas v. Gonzales, 424 F.3d 926, 928-29 (9th Cir. 2005); Puri v. Gonzales, 464 F.3d 1038 (9th Cir. 2006). In both of these cases, however, an alien filed a habeas petition to challenge an order of removal. Martinez-Rosas, 424 F.3d at 928; Puri, 464 F.3d at 1040.

Plaintiffs respond that they are not seeking review of a "final order of removal," which would admittedly be governed by the REAL ID Act, 8 U.S.C. § 1252(a). See Pls.' Reply, docket no. 12, at 8 n.3. Plaintiffs contend that "[t]he REAL ID Act does not change

ORDER - 13

1  the rule that the courts of appeal have jurisdiction to review a 'final order of removal,' INA §

2  242(a), 8 U.S.C. § 1252(a), while the district courts have jurisdiction to review all other

3  claims 'arising under the Constitution, laws, or treaties of the United States.' 28 U.S.C. §

4  1331." Id. at 3 n.1.

5       The Government challenges this assertion made by Plaintiffs and argues that two

6  provisions of the INA § 242, as added or amended by the REAL ID Act, divest the district

7  courts of subject matter jurisdiction. See Defs.' Reply, docket no. 13, at 1-2 (citing INA §

8  242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D) and INA § 242(b)(9), 8 U.S.C. § 1252(b)(9)

9  (referred to hereinafter as "Sections 242(a)(2)(D) and 242(b)(9)").

10       In light of the new arguments raised in the Government's Reply, Plaintiffs filed a

11  Surreply, which argues that Sections 242(a)(2)(D) and 242(b)(9) do not preclude this Court's

12  judicial review of decisions made outside of removal proceedings. Pls.' Surreply, docket no.

13  15, at 1-3. Plaintiffs cite a post-REAL ID Act district court habeas case that transfers to the

14  court of appeals the part of the case seeking judicial review of the order of removal, but

15  retains jurisdiction over the application for adjustment of status that was pending before CIS.

16  See Zhicay v. Sec. of Dep't Homeland Sec., 2005 WL 3180188 at *2 (D. Conn 2005)

17  ("Because [the REAL ID Act of 2005] pertains only to habeas corpus petitions seeking

18  review of orders of removal, this Court retains jurisdiction over Zhicay's other claims.").

19       The Government's argument that the REAL ID Act precludes jurisdiction is

20  unconvincing because there is no final order of removal at issue in the present case. The

21  Jaa, Tang, and Chan line of cases are still good law demonstrating that the Court has

22  jurisdiction over Plaintiffs' claim for adjustment of status.

23       **5.**    **Mootness**

24       Finally, the Government argues that Plaintiffs' lawsuit is moot because they have

25  been given the relief that they sought in their December 22, 2005 Motion to Reopen, namely,

26  to be placed in removal proceedings so that they can have a hearing before a U.S.

ORDER - 14

Immigration Judge. The Government argues that the Court lacks subject matter jurisdiction over moot claims, relying upon <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 74 (1997) and <u>Picrin-Peron v. Rison & INS</u>, 930 F.2d 773, 775-76 (9th Cir. 1991). <u>Arizonans for Official English</u> involved an employee who was concerned about discharge or other discipline in her state employment as a result of her use of Spanish in the course of her work for the state; the case was held to be moot as a result of the employee's voluntary resignation. <u>See</u> 520 U.S. at 74. <u>Picron-Peron</u> involved a habeas petition that was dismissed as moot upon the petitioner's release from custody. <u>See</u> 930 F.2d at 775-76. These cases show that the Court should look to the relief sought in the underlying complaint to determine whether the case is moot.

The relief Plaintiffs' seek in their Complaint – to order that the Lehmans I-485 applications should be deemed to have been properly filed on May 14, 2003 as a result of the illegal policy of refusing to accept concurrently filed I-360 and I-485 applications, to order CIS to approve the Lehmans' I-485 applications, to order CIS not to apply the grounds of ineligibility specified in INA § 212(a)(9)(B) as a result of the ineffective assistance of counsel received by the Lehmans, and to order CIS to issue employment authorization to Mr. Lehman valid from May 14, 2003, until there is a final decision made on his application for adjustment of status – has not been mooted by the commencement of removal proceedings against them. Accordingly, the case is not moot.

### 6. **Conclusion Re: Jurisdiction**

The Court has subject matter jurisdiction over Plaintiffs' claims. The Court DENIES Defendants' Cross-Motion to Dismiss, docket no. 11.

### B. **Plaintiffs' Motion for Summary Judgment, docket no. 8**

#### 1. **Summary Judgment Standard**

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

### 2. **Analysis**

Except for Defendants' previously discussed Cross-Motion to Dismiss, docket no. 11, Defendants have failed to file papers in opposition to Plaintiffs' Motion for Summary Judgment. "If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Local Rule CR 7(b)(2). The Court deems Defendants' failure to file papers in opposition to Plaintiffs' Motion for Summary Judgment as an admission that Plaintiffs' motion has merit. The Court addresses Plaintiffs' various requests for relief as follows.

The Court declares that CIS's policy to accept concurrent filings of Form I-140s and Form I-485s, but not to accept concurrent filings of Form I-360s and Form I-485s, see 8 C.F.R. § 235.2(a)(2)(i)(B), violates the Equal Protection component of the Due Process Clause of the Fifth Amendment of the United States Constitution. Accordingly, CIS's decision on May 20, 2003 to refuse to accept the Lehmans' Form I-485 applications for adjustment of status violated the Due Process Clause. The Lehmans' Form I-485 applications for adjustment of status shall be deemed to have been properly filed on May 14, 2003.

The Court declares that CIS's denial of the Lehmans' I-485 applications on August 30, 2005 was erroneous in light of CIS's decision on May 20, 2003 to refuse to accept the Lehmans' Form I-485 applications for adjustment of status. The Court does not reach the issue of whether the Lehmans have met the statutory requirements of INA § 245(a), 8 U.S.C. § 1255(a). The Court ORDERS CIS to make a final decision on the Lehmans' I-485 applications for adjustment of status, in light of CIS's March 31, 2004 approval of the I-360 Petition for Special Immigrant, within 60 days of the entry of this Order.

The Court declares that CIS's March 15, 2006 denial of the Application for Employment Authorization (Form I-765) was erroneous because it was based on the erroneous denial of Mr. Lehman's I-485 application. The Court ORDERS CIS to issue employment authorization to Mr. Lehman valid from May 14, 2003, until there is a final decision made on his application for adjustment of status. The Court FURTHER ORDERS CIS to make a final decision on Mr. Lehman's application for employment authorization within 60 days of CIS's final decision on Mr. Lehman's application for adjustment of status.

The Court does not reach the ineffective assistance of counsel and tolling issues presented to the Court as they are mooted by the Court's ruling that the Lehmans' I-485 applications shall be deemed to have been properly filed on May 14, 2003.

### 3. Conclusion Re: Summary Judgment

The Court GRANTS Plaintiffs' unopposed Motion for Summary Judgment, docket no. 8, as outlined herein.

## III. CONCLUSION

The Court has subject matter jurisdiction over Plaintiffs' claims and declines to stay the matter pending the outcome of the removal proceedings. Accordingly, the Court DENIES Defendants' Cross-Motion to Dismiss, or in the Alternative, to Stay District Court Proceedings, docket no. 11.

The Court GRANTS Plaintiffs' unopposed Motion for Summary Judgment, docket no. 8, as outlined herein.

IT IS SO ORDERED.

DATED this 23rd day of February 2007.

*Thomas S. Zilly*
Thomas S. Zilly
United States District Judge

ORDER - 17